# CHARLES M. WAY v. WILLIAM RUFF.[1]

July 29, 1910.

Nos. 16,658—(219).

**Sale of capital stock — bankruptcy of purchaser — action by trustee against seller — evidence.**

In an action brought by a trustee in bankruptcy to recover the amount claimed to have been paid by the bankrupt for the capital stock of the corporation, purchased from one stockholder by another, *held:*

1. It appearing from the evidence that the corporation was solvent at the time the stock was sold, any arrangement made by the purchasing stockholder with the corporation for the surrender or cancelation of part of the stock so purchased in consideration of the payment of the money was incompetent and immaterial to prove that the selling stockholder received the money of the corporation.

2. The corporation being solvent at the time of the sale of the stock, the fact that during the subsequent period the corporation accumulated no surplus and conducted its business at a loss was immaterial and incompetent for the purpose of proving that the selling stockholder had knowledge that the money for the purchase of the stock was furnished by the corporation.

3. The subsequent financial condition of the purchasing stockholder, and the fact that he never reimbursed the corporation for the money advanced by it, if any, in the purchase of the stock, was immaterial and incompetent to prove that the seller of the stock had knowledge of the true relation between the purchaser and the corporation, or that the money was furnished by it.

4. The fact that the corporation loaned to the purchasing stockholder its outstanding sale contracts as collateral security for the deferred notes in payment of the stock, and the fact that the notes were deposited by the payee with a bank and collected by it as they matured in the usual course of business at the office of the corporation, and were paid by checks of the corporation to the order of the bank, but without the knowledge of the seller, do not conclusively prove that he knew that the money was paid by the corporation.

[1] Reported in 127 N. W. 564, 609.

5. The fact that the selling stockholder received, as the first cash payment for the purchase price of the stock, a check of the corporation, was not sufficient to require the trial court to find that the corporation actually furnished the money presented by the check, or that the selling stockholder had knowledge thereof.

6. The evidence is sufficient to justify the court in finding that the sale of stock was made in good faith, without any attempt to defraud the corporation or any of the creditors, and that the existing creditors at the time of the sale knew that the sale of the stock was made, that the name of the corporation was changed after the sale, that the purchasing stockholder became the president, treasurer, and manager of the new corporation, and that, in continuing to do business with it with knowledge of such facts, the creditors waived whatever rights they may have had.

Action in the district court for Ramsey county by the trustee in bankruptcy of the Winslow Furniture & Carpet Company, to have defendant declared the owner of three hundred fifty-five shares of its capital stock, and that he be ordered to pay over to plaintiff all the moneys which had been paid to him in cash or by reason of certain promissory notes, to-wit, the sum of $25,008. The facts are stated in the opinion. In his amended answer defendant alleged that on February 10, 1906, he resigned as a director and officer, and subsequent to December 9, 1905, he never exercised any management of the corporation or had any interest in it; that he paid full value for all shares of stock in the corporation ever at any time issued to him; that on February 10, 1906, at the earnest solicitation of Winslow, he in good faith transferred to Winslow all his stock in the corporation for the sum of $25,008, paid and agreed to be paid by Winslow. Defendant expressly averred that the sale was not made to the corporation, and the corporation was in no manner concerned therein, either directly or indirectly, and alleged that $5,000 of the consideration was paid to him by Winslow in cash, and that Winslow represented that said sum was paid out of his own funds; that the balance was paid by the delivery of twenty-nine promissory notes dated February 10, 1906, but that the corporation was in no manner a party to the notes, and that subsequently all of the notes were paid by Winslow; that all persons or corporations who had

business dealings with the corporation prior to February 10, 1906, were fully advised of the sale and transfer and acquiesced therein. The reply was a general denial. The case was tried before Kelly, J., who made findings of fact and as conclusion of law ordered judgment in favor of defendant. From an order denying plaintiff's motion to modify the findings, and to vacate the decision rendered and grant a new trial, plaintiff appealed. Affirmed.

*Morphy, Ewing & Bradford,* for appellant.

*Wm. T. McMurran* and *B. H. Schriber,* for respondent.

LEWIS, J.

In 1905 the Winslow & Ruff Furniture & Carpet Company was a corporation engaged in the retail business in St. Paul and Minneapolis. Irving M. Winslow was the president and general manager; respondent, William Ruff, was vice president and treasurer; and Maurice J. Trevor was secretary. The outstanding capital stock was $75,000, of which Winslow and Ruff each owned $35,000. Some differences having arisen between Winslow and Ruff, Winslow, in December, 1905, secured an option for the purchasing of Ruff's stock on the basis of its book value, as shown by an inventory to be taken February 1, 1906. Winslow having concluded to buy the stock under his option, an inventory was taken February 1, 1906, which disclosed that the value of Ruff's stock was $25,008. Ruff transferred his stock to Winslow, and in payment thereof received a check of the corporation for the sum of $5,000, and promissory notes executed by Winslow to Ruff's order for the sum of $20,008, payable monthly from March 10, 1906, to July 10, 1908. These notes drew interest at six per cent., and were payable at the St. Paul National Bank. The annual meeting of the stockholders took place February 12, 1906, when the following resolution was adopted:

" 'Whereas, Mr. William Ruff has offered to sell and transfer all his stock in this company to Mr. Irving M. Winslow, provided this company will transfer to him as collateral security for the payment by Mr. Irving M. Winslow of the balance of the purchase price, not exceeding twenty thousand dollars ($20,000.00), as follows: One

thousand dollars ($1.000.00) per month for the months of March, April, May, June, and July, 1906, and six hundred twenty-five ($625.00) per month for twenty-four successive months; and it is considered by the stockholders that such transfer of stock and the withdrawal of Mr. William Ruff from this corporation will be to the financial advantage of the corporation and every stockholder thereof: Now, therefore, in consideration of the benefits to be realized by said corporation and the respective stockholders thereof, be it resolved:

" 'That if the said William Ruff shall transfer to said Irving M. Winslow all his stock in this corporation, this corporation [shall] thereupon assign to him live contracts to the amount of twenty thousand dollars ($20,000.00,) and renew said agreements each thirty days for an amount equal to the total amount of its notes unpaid, plus ten per cent. from time to time as the amount unpaid may require. Said contracts to be held as collateral security for the payment of the amount unpaid for said stock, upon such terms as the collections or sale thereof, in case of default, as the president and secretary may deem proper or necessary, and that the president and secretary execute such assignment.' " Which motion was seconded, and upon a roll call "all the shares of stock, except those owned by Mr. William Ruff not voting, were voted in favor of the resolution, and the same was declared adopted."

At this annual meeting the corporation also amended its articles of incorporation, and changed the name to The Winslow Furniture & Carpet Company, of which Mr. Winslow became president and treasurer, and Ruff retired, both as an officer and a stockholder. The notes were paid through the St. Paul National Bank, and its successor, the Capital National Bank, as they became due. In September, 1908, the corporation went into bankruptcy. Appellant, Way, was appointed trustee, and brought this action to recover from Ruff the full amount of $25,008, with interest, upon the ground that the money which Ruff received for his stock had been furnished by the corporation. Respondent claimed that he had sold his stock to Winslow in good faith, and had no knowledge that any of the money received by him was the money of the corporation, if such were the fact.

The trial court found for respondent, and the pertinent findings of fact challenged upon this appeal are as follows:

"That at the time said option was given, and at all times thereafter up to and including the 12th day of February, 1906, said corporation was a solvent and going concern, and its assets exceeded all liabilities in the sum of more than $66,000.

"The court further finds that on the 12th day of February, 1906, pursuant to said option and agreement to purchase, the defendant actually and in good faith sold and transferred all his stock in said corporation to Irving M. Winslow, and that said Irving M. Winslow actually and in good faith purchased said stock from said defendant, and at the time of said sale and purchase said defendant actually and in good faith expected said Winslow would pay for said stock, and said Winslow at the time of said purchase actually did intend to pay for said stock; and the court finds that the defendant never at any time had notice of any contrary intention on the part of said Winslow, and that defendant had no knowledge or reason to believe that said Winslow did not pay for said stock out of his own personal assets, except as hereinafter found.

"That said Winslow paid said defendant Ruff for his said stock the sum of $25,008 in the manner following: Five thousand dollars in cash, evidenced by the check of said corporation, signed by said Winslow as its president, and payable to the order of defendant, Ruff, and in addition by promissory notes, signed and delivered by said Winslow and payable to the order of said Ruff, one note for $1,008, four for $1,000 each, and twenty-four for $625 each (as specified in folios 18 and 19 of said amended complaint), and all payable at the St. Paul National Bank, in St. Paul. That said first note became due on March 10, A. D. 1906, and the others in succession on the 10th day of each month thereafter, ending on July 10, A. D. 1908, and were all paid at maturity in ordinary course of business. That the security referred to in said second amended complaint as having been given by said corporation as collateral to said promissory notes of said Winslow was given, but that it does not appear that any of said contracts or the proceeds thereof were ever used to pay said notes

or any of them, or that said corporation was in any wise damaged thereby.

"That it did not appear on the hearing what consideration said Winslow gave said corporation for the use of its said check above referred to, or what was at any time the state of account between said corporation and said Winslow.

"That said sale and transfer of said stock was openly and fairly made, and without concealment from any one, and the only persons or corporations who were creditors of said corporation on said 12th day of February, 1906, had and received, at or about the time of the transfer of said stock by said defendant to said Winslow, full notice and knowledge thereof and of the facts in relation thereto, and acquiesced therein."

Appellant assigns a great many errors; but, as we understand the case, they may all be grouped under the following heads:

As a general proposition, appellant submits that it conclusively appears from the evidence that there was an understanding and scheme or conspiracy between Ruff and Winslow by which the money of the corporation was to be used for the purchase of Ruff's stock, and as a part of this plan, as soon as the stock was purchased in the name of Winslow, a certain portion of it was to be canceled, which was the consideration to the company for furnishing the money.

1. As bearing upon this proposition, it is claimed that the court committed error in preventing appellant from showing that three hundred five shares of the capital stock transferred by Ruff to Winslow were thereafter surrendered and new certificates in lieu thereof were issued to Winslow.

The record shows that Ruff was present at the meeting of the stockholders held February 12, 1906, but did not vote on the resolution above set out, and, so far as we are informed, took no part in any of the proceedings at that meeting. Appellant, however, claimed that Ruff was a party to the scheme to have the corporation furnish the money, and endeavored to prove it at the trial by showing his knowledge of the subsequent attempt by Winslow to cancel a part of the stock purchased from Ruff. While Winslow was on the stand, he was asked to explain whether he held the proxies of the stockholders

other than Ruff for the meeting of February 12, 1906, and what plan for the purchase of Ruff's stock he had outlined to these stockholders. His answer was: "I told them I wished to purchase Mr. Ruff's interest; that I thought it would be to the best interests of the business for me to do so, and that the only way I could do it was to secure Mr. Ruff with contracts of the company, and I wished the authority of the stockholders to carry out that plan." He was then asked the following question: "What, if anything, did you say to them with reference to a reduction of the capital stock as a result of that plan?" The question was objected to, on the ground that it was incompetent, irrelevant, immaterial, and hearsay, and that Ruff was not present. The objection was properly sustained. In the absence of other evidence connecting him with the transaction, Ruff was not bound by the arrangement, even if made, between Winslow and the other stockholders to reduce the capital stock after Winslow completed the purchase of Ruff's stock.

For the same purpose counsel for appellant made a general offer to prove what the arrangement was between Winslow and the stockholders other than Ruff; that Winslow should acquire Ruff's stock in the manner stated, and should thereupon surrender two hundred ten shares of it to the company; and that in pursuance of such arrangement two hundred ten shares of the capital stock were actually surrendered and canceled. This offer was properly rejected for the reason above stated, and the surrender occurred after Ruff sold his stock and retired from the corporation, and there was no evidence connecting him with the transaction.

2. That the court erred in refusing to permit appellant to prove that from February 12, 1906, until the company became a bankrupt in September, 1908, it accumulated no surplus, but was conducted at a loss, and that its capital was impaired.

While the witness Winslow was on the stand, he stated that after February 12, 1906, until bankruptcy proceedings were instituted against the Winslow Furniture & Carpet Company, it had conducted its business in the usual way, and that he was the president, treasurer, and general manager of the corporation. He was asked the following questions: "State whether or not, subsequent to February

10, 1906, the corporation at any time  *  *  * had any surplus; * * * whether or not the business of the company was operated at a profit or loss;  *  *  * whether or not the capital of the company, by reason of its corporate enterprise, was impaired subsequent to February 12, 1906." These questions were all objected to upon the ground that they were incompetent, irrelevant, and immaterial, that no foundation had been laid, and that they called for a conclusion. The court was justified in excluding the evidence called for upon the ground that it did not appear to have any relevancy to the matter under consideration, even if a proper foundation was laid. Ruff sold his stock to Winslow on February 12, 1906, when the corporation was perfectly solvent, and its subsequent financial condition did not affect the transaction.

3. That the court committed error in not permitting appellant to prove that Winslow never paid any of the promissory notes by personal check, or otherwise, and never returned to the corporation any part of the $25,008 and interest; that he was never able to pay any of the same; and that his financial condition was not changed after the payment of the last note in July, 1908.

Some of the questions were objectionable, because they assumed that the company had paid the money for Winslow, and his financial condition subsequent to the purchase of Ruff's stock did not tend to prove that Ruff secured the corporation's money.

4. That the court erred in not permitting appellant to prove that all of the promissory notes were placed by Ruff in the St. Paul National Bank, and its successor, the Capital National Bank, for collection; that they were collected by those banks by checks drawn upon the account of the corporation kept there, and upon receipt of the checks the account of the corporation was debited with the amount of the respective checks, and the account of Ruff, at such banks, credited with the same amount; that the funds out of which the checks were paid were the funds of the corporation on deposit in those banks, and were the proceeds of the collection of the contracts hypothecated and other contracts and sales of merchandise, and that the payments were not made out of any surplus which the corporation had; that the corporation had no surplus out of which to make

such payments, and that at the time the payment was made the corporation was indebted in a large amount.

During the course of the trial appellant called as a witness the secretary of the corporation, and she identified Exhibit No. 17, which was a check dated January 10, 1908, for $696.87, payable to the order of the Capital National Bank, signed by

"Winslow Furniture & Carpet Co.,
"Margaret G. Conley, Secy."

She also identified Exhibit No. 18, which was one of the notes executed by appellant to William Ruff, dated February 10, 1906, for the sum of $625, payable January 10, 1908. The witness was asked whether she could state that the check, Exhibit No. 17, was given in payment of the note, Exhibit No. 18. The question was objected to upon the ground that it was incompetent, irrelevant, immaterial, and hearsay, and that there was no evidence to connect Ruff with the check, or that he ever knew in what manner his note was paid at the bank. The objection was sustained. Appellant thereupon made an offer to prove as above stated. A similar offer was made with reference to other notes maturing in 1907 and 1908, and the court ruled the same out as immaterial, upon the ground that it was not shown that Ruff had any knowledge of the fact, conceding it to be true.

Appellant announces that it stands on the proposition that the banks were the agents of Ruff in the collection of the notes, and that if any representative of the bank, on presentation of the notes for collection, received a check of the corporation in payment therefor, it was immediately charged with knowledge of the fact that the corporation was furnishing the money for payment of the notes, and that such knowledge was imputable to Mr. Ruff. This, it is claimed, with the additional fact that contracts of the corporation were being used to secure payment of the notes, was conclusive evidence that Ruff knew the company furnished the money. It is a common thing in commercial transactions for the holder of notes or bills receivable to deposit them for collection, or discount, at a bank, and receive the money without any knowledge of the manner of payment. A manager or financial officer of a corporation may pay a

personal debt by issuing the check of the corporation for the amount, and then charge himself with the same upon the books of the corporation. This method is not uncommon.[1]

So far as the evidence in this case informs us, the transaction now under consideration may have been of this character. The books of the corporation were not produced, and the real relations between Winslow and the corporation were not shown. There is no evidence that Ruff knew how the money was paid, or by whom. There is no evidence that the contracts which were put up for the security of the notes were collected for or used for their payment. On the other hand, the amount of money received from those contracts was paid in and deposited in the St. Paul National Bank to the credit of the corporation. There is nothing in the evidence to show that, at any time subsequent to the time of selling out his stock, Ruff had any knowledge whatever as to whether the corporation was losing money, or building up a surplus, and we know of no rule of law which required him to go to the bank, and trace the manner in which each particular note was paid, and ascertain from what source the money came. What might have been required of him, had the company been insolvent at the time, we need not now inquire. According to the record, and the court's findings, the company was then perfectly solvent. It does not appear that Ruff sold his stock for the reason that the company was threatened with insolvency. He proceeded in good faith, so the court finds, and with the consent of all the other stockholders.

5. That the court erred in not finding that defendant was entitled to judgment.

It is insisted that the court erred in not finding for appellant in at least the sum of $5,000, the amount of the corporation check given at the time of the purchase. Winslow was then the holder of nearly the entire capital stock, and had become entitled to most of the income. The corporation was solvent, and the mere fact that Winslow gave him a company check was not enough to require the trial court to find that he knew he was receiving corporation money. But there is another view of the question. Conceding that the trustee might trace and recover the proceeds of this check for the then exist-

[1]See opinion on page 67, infra.

ing creditors, the evidence shows, and the court found, that those creditors knew all about the transaction, and waived their rights, if any they had. The Buck Stove Company and the St. Paul National Bank were creditors, to the amount of $5,000 each, at the time Ruff sold out. These creditors knew Ruff had sold his stock to Winslow and had retired from the firm; that the name of the corporation had been changed, and that Winslow had become its president, general manager, and treasurer. The Buck Stove Company was informed that some arrangement existed between the company and Winslow by which the corporation contracts were to be used for the payment of Ruff's notes, yet in the face of such knowledge that company continued to do business with the new corporation and renewed its note from time to time.

We find that the evidence is sufficient to sustain the findings and conclusions of the trial court.

Affirmed.

On September 9, 1910, the following opinion was filed:

PER CURIAM.

On the application for re-argument attention is called to the statement in the opinion that a financial officer of a corporation may pay his personal debt with the check of the corporation and charge himself with the amount on the books, and that such practice is not uncommon. This statement was made in connection with the consideration of the collection of accounts from a financial officer of the corporation through a bank, and we held that the evidence was not sufficient to require the trial court to hold that Ruff knew corporate funds were used to pay his notes. But, standing alone, the statement does not express a correct rule of law, and is liable to be misunderstood. As a general proposition, of course, a financial officer of a corporation has no authority to issue the company's check in payment of his own debt.

Application denied.